679 F.2d 1307
 3 Employee Benefits Ca 1577
 FRANCHISE TAX BOARD OF the STATE OF CALIFORNIA, Appellee,
v.
CONSTRUCTION LABORERS VACATION TRUST FOR SOUTHERN
CALIFORNIA, Edward Ashton, Al Atwood, Gary Bronneck, John
Clarke, R. C. Gallyon, Richard Greenberg, Roger Jaska,
William Middleton, Louis Bravo, Benjamin T. James, George
Mattocks, William R. McClain, Nick Orsura, Joe Rivera, Ray
M. Wilson, and James Keyes, Appellants.
 No. 80-6080.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 2, 1982.
Decided June 22, 1982.
 
 James P. Watson, Cox, Castle & Nicholson, Los Angeles, Cal., for appellants.
 Patti S. Kitching, Los Angeles, Cal., argued, for appellee; Thomas E. Stanton, Johnson & Stanton, Victor Van Bourg, San Francisco, Cal., on brief.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN and TANG, Circuit Judges, and SOLOMON* District Judge.
 GOODWIN, Circuit Judge.
 
 
 1
 Three union members owe the State of California $48.70, $206.95 and $124.91 in unpaid personal income tax. The Franchise Tax Board of California levied against money held in trust for the three by the Construction Laborers' Vacation Trust Fund. When trustees for the fund refused to pay over the money owed, the state brought action for declaratory relief. The district court,[1] on cross motions for summary judgment, held that the vacation fund was not protected from the levy.
 
 
 2
 The Trust appeals on the ground that ERISA (Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq.) preempts California's attempt to levy on the vacation trust for unpaid taxes. The Trust relied on an ERISA Advisory Opinion from the Department of Labor. The state relies on the difference between vacation benefits and retirement benefits, and asserts that Congress intended to protect only the latter.
 
 
 3
 The facts are undisputed. Much of the law is likewise undisputed. When delinquent taxes are owed to the State of California, the state is authorized to issue a notice to withhold under California Revenue and Taxation Code, § 18817, which reads:
 
 
 4
 "The Franchise Tax Board may by notice, served personally or by first class mail, require any employer, person, officer or department of the State, political subdivision or agency of the State ... having in their possession, or under their control, any credits or other personal property or other things of value, belonging to a taxpayer or to an employer or person who has failed to withhold and transmit amounts due pursuant to Section 18815 or 18818, to withhold, from credits or other personal property or other things of value, the amount of any tax, interest, or penalties due from the taxpayer ... and to transmit the amount withheld to the Franchise Tax Board at such time as it may designate."
 
 
 5
 ERISA specifies that its provisions "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan ...." 29 U.S.C. § 1144(a). An employee benefit plan is defined as a welfare plan or a pension plan. 29 U.S.C. § 1002(3). A welfare benefit plan, in turn, is defined as a plan with "medical, surgical ... accident, disability ... or vacation benefits." 29 U.S.C. § 1002(1).
 
 
 6
 The Trust in the instant case is an employee benefit trust to which employer parties to collective bargaining agreements with the Southern California District Council of Laborers must contribute. Contributions are made for each hour worked or are otherwise paid pursuant to the bargaining agreement.
 
 
 7
 The Trust maintains a "vacation account" for each laborer and at a specific time gives him or her a check for his or her accumulated vacation benefits. The Trust is a spendthrift trust designed to insure that the beneficiaries do not dissipate the benefits. Article 9.08 of the Trust Agreement provides:
 
 
 8
 "It is the intent and purpose of the Plan, and of this Agreement, and a material part of the consideration for the making of contributions to the Fund by individual employers, that the money in each vacation account shall be received by the employee entitled thereto personally. Accordingly, no payments due the Fund and no monies in the vacation accounts established pursuant to the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any employee or other person and any such anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge shall be void and ineffective. The money credited to the vacation account shall be subject to withdrawal and distribution only at the times, and in the manner and for the purposes specified in this Agreement." (Emphasis added.)In a similar vein, § 4.06 of the Trust Agreement restrains the beneficiaries from alienating the accumulated money and specifies that the money "shall be exempt from the claims of creditors or other claimants from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings."
 
 
 9
 ERISA does not in so many words protect vacation trusts from creditors' claims, as it does protect pension plans. 29 U.S.C. § 1056(d)(1). Extending similar protection to vacation funds is consistent with the statute, however, if not demanded by it. Both types of ERISA plans have the same goal: to provide accumulated money to a worker for future beneficial use. The worker's money deserves trust protection from dissipation regardless of the purpose for which the money has been set aside under ERISA.
 
 
 10
 While the state has pointed out differences between pension funds which are conceded to be protected and vacation funds which the state seeks to reach for tax collection, the state has not identified a legal basis to warrant a retreat from preemption. Moreover, Congress has not left us at liberty to construe preemption as the state would have us construe it.
 
 
 11
 The same chapter of ERISA that describes the scope of protection of employee pension benefits provides for federal preemption in connection with welfare benefit plans. 29 U.S.C. § 1144(a). See Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 522, 101 S.Ct. 1895, 1905, 68 L.Ed.2d 402 (1981).
 
 
 12
 The vacation trust fund now before the court is obviously a benefit plan described in § 1002(1). Accordingly, under the teaching of the Alessi case, which had not been decided when this matter was before the district court, we have no choice but to reverse with directions to enter judgment for the appellants.
 
 
 13
 The judgment in favor of the state is vacated and the cause is remanded for the entry of a declaratory judgment in favor of the appellants as prayed for in their cross-motion for summary judgment. Each party is to pay its own costs.
 
 TANG, Circuit Judge dissenting:
 
 14
 I respectfully dissent. The majority opinion is flawed in two major respects. First, I doubt that the district court possessed subject-matter jurisdiction over this action. Second, even if the district court possessed subject-matter jurisdiction, I disagree with the majority opinion's conclusion that ERISA preempts the California levying statute.
 
 
 15
 I. The Absence of Subject-Matter Jurisdiction.
 
 
 16
 It is axiomatic that an action brought in state court may be removed only if federal question, diversity, or some other independent federal jurisdictional basis exists. 28 U.S.C. § 1441(a) (1976); Guinasso v. Pacific First Federal Savings & Loan Association, 656 F.2d 1364, 1366 (9th Cir. 1981). It is likewise axiomatic that the jurisdictional basis for removal must be apparent from the plaintiff's complaint rather than from the defendant's answer or counterclaim. See Gully v. First National Bank in Meridian, 299 U.S. 109, 112-18, 57 S.Ct. 96, 97-100, 81 L.Ed. 70 (1936).
 
 
 17
 The Franchise Tax Board's complaint does not provide these two fundamental basis for removal. Its prayer for relief is grounded purely upon state law and seeks recovery against only an in-state defendant. No federal question is raised, nor does diversity of citizenship exist.[1] It is only the Trustees' defense that poses a federal question, namely, whether ERISA preempts the state levying statute. When raised as a defense, however, federal preemption is an insufficient jurisdictional basis for removal. See, e.g., Guinasso, 656 F.2d at 1366. The conclusion is inescapable that the district court lacked subject-matter jurisdiction over this action to have permitted removal. See Gully, 299 U.S. at 112-18, 57 S.Ct. at 97-100 (removal improper where plaintiff state tax collectors' cause of action based in state law and federal question presented only in defendant's answer). The district court judgment should therefore be vacated with instructions to remand the action to state court.
 
 
 18
 II. Preemption by ERISA.
 
 
 19
 The issue on the merits is whether ERISA preempts the California levying statute insofar as the state statute permits the Franchise Tax Board to levy against a vacation trust to satisfy a beneficiary's delinquent taxes. The majority opinion concludes that the levying statute is preempted. It finds first that the levying statute is in conflict with an implied requirement in ERISA prohibiting levies against vacation trust funds and, second, that the levying statute falls within the preemptive scope of ERISA § 514(a), 29 U.S.C. § 1144(a) (1976), as a State law relating to an employee benefit plan.[2] Ante at 1309. Neither ground is persuasive.
 
 
 20
 A. Direct Conflict with ERISA.
 
 
 21
 It is clear that a state's levying statute is preempted if it directly conflicts with one of ERISA's regulatory provisions. See, e.g., Ray v. Atlantic Richfield Co., 435 U.S. 151, 158, 98 S.Ct. 988, 994, 55 L.Ed.2d 179 (1978). The majority opinion concedes that "ERISA does not in so many words protect vacation trusts from creditors' claims," ante at 1309, but argues that ERISA's purpose and the anti-alienation clause in section 206(d)(1), 29 U.S.C. § 1056(d)(1) (1976),[3] support finding an implied prohibition in ERISA against levying a vacation trust. Ante at 1309.
 
 
 22
 The majority opinion's reliance upon ERISA § 206(d)(1) is misplaced. Section 206(d)(1) explicitly states that it governs only pension funds. The plan here is a vacation trust fund, which fits within the definition of an "employee welfare benefit plan." 29 U.S.C. § 1002(1). An "employee welfare benefit plan" in turn is strictly distinguished under ERISA from a "pension plan" and is excluded from the statutory part containing the anti-alienation provision. See 29 U.S.C. § 1051(1).
 
 
 23
 Nor can an anti-alienation restriction be fairly implied from ERISA to apply to employee welfare benefit plans. First, the care Congress exercised in drafting section 206(d)(1) to exclude employee welfare benefit plans from that section's coverage should alone be sufficient to conclude that Congress did not mean to create an implied anti-alienation restriction. See FTC v. Simplicity Pattern Co., Inc., 360 U.S. 55, 66-67, 79 S.Ct. 1005, 1012, 3 L.Ed.2d 1079 (1959). Second, no support can be found in ERISA's legislative history to suggest that Congress meant to immunize employee welfare benefit plans from garnishment, attachment or levy.
 
 
 24
 Third, ERISA's purposes do not mandate implying an anti-alienation restriction that is applicable to employee welfare benefit plans. The majority opinion argues that Congress was just as concerned with vacation funds as it was with pension funds. ERISA's regulatory structure suggests otherwise. ERISA heavily regulates pension funds. It imposes extensive reporting and disclosure requirements, minimum plan standards for participant eligibility and vesting, minimum funding standards, and standards of conduct for persons who serve in a fiduciary capacity to a plan. In contrast, the only statutory requirements imposed upon employee welfare benefit plans are the reporting and disclosure requirements of Part I and the fiduciary responsibility standards of Part IV. ERISA's limited regulation of welfare plans strongly suggests that Congress was more concerned with the possible dissipation of pension benefits than with the possible loss of employee welfare benefits. This difference in concern should not be surprising. In real world terms, the loss of one's pension is far more catastrophic than the loss of funds devoted to financing an annual vacation.
 
 
 25
 Even if section 206(d)(1) applies to vacation trusts, either directly or by implication, it is doubtful whether section 206(d)(1) by its own force preempts state levying statutes. When Congress has intended to preempt state levy and attachment statutes, it has manifested its intent in explicit statutory language. See, e.g., 38 U.S.C. § 3101(a) (veteran's benefits); 42 U.S.C. § 407 (Social Security Act); 45 U.S.C. § 231m (Railroad Retirement Act). See also National Bank of North America v. International Brotherhood of Electrical Workers Local # 3, 419 N.Y.S.2d 127, 131-32, 69 A.D.2d 679, 686-88, appeal dismissed, 48 N.Y.2d 752, 422 N.Y.S.2d 666, 397 N.E.2d 1333 (1979). Section 206(d)(1), however, makes no mention of either levy or attachment.
 
 
 26
 Moreover, to the extent that the section does impose a restriction, the Ninth Circuit decision in Operating Engineers v. Zamborsky, 650 F.2d 196, 201 (9th Cir. 1981), suggests that section 206(d)(1) governs merely the standards a plan must recite and does not limit a state's power to reach trust funds. While Zamborsky dealt only with garnishment statutes and not levying statutes, its rationale appears to compel the conclusion that section 206(d)(1) does not limit a state's traditional power to authorize a tax levy against a trust.
 
 
 27
 B. Preemption by Section 514(a).
 
 
 28
 Aside from relying upon section 206(d)(1), the majority opinion also argues that ERISA § 514(a) preempts the California levying statute. Ante at 1309. Although the majority opinion's reasoning is not entirely clear, it apparently finds dispositive the Supreme Court's recent decision in Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 524, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981).
 
 
 29
 Alessi, however, does not lend strong support for the proposed opinion's position. The key element in Alessi's finding of federal preemption was the Court's conclusion that Congress had expressly intended to give pension administrators the option of offsetting pension benefits against workmen's compensation awards. Id. at 514-21, 524, 101 S.Ct. at 1901-1905, 1906. The New Jersey statute under challenge there frustrated this Congressional command by prohibiting pension offsets. Given this direct conflict between federal and state legislative will, the Court acknowledged that it did not need to explore the outer limits of section 514(a)'s preemptive scope to hold the state statute preempted. Id. at 524, 101 S.Ct. at 1906. Indeed, given this direct conflict, it is likely that the state statute in Alessi would have been preempted even in the absence of section 514(a).
 
 
 30
 In contrast to the offset issue in Alessi, nothing in ERISA's statutory text or its legislative history reveals Congress' intention toward state levying statutes. The direct conflict between federal and state law that was present in Alessi is absent here. Alessi thus offers little guidance.
 
 
 31
 The absence of a direct conflict with one of ERISA's provisions does not necessarily mean that section 514(a) does not preempt the California levying statute. Section 514(a) states broadly that ERISA "supercede(s) ... State laws insofar as they may relate to any employee benefit plan ..." 29 U.S.C. § 1144(a) (emphasis added). This expansive language is refined by the section's definition of "State", which "includes a State, any political subdivision thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms and conditions of employee benefit plans covered by this subchapter." 29 U.S.C. § 1144(c)(2) (emphasis added). This choice of language indicates that Congress meant section 514(a) to have a far-reaching preemptive effect, superceding not only laws that directly regulate employee benefit plans, plan qua plan, but also laws that have a regulatory effect. See generally Hewlett-Packard Co. v. Barnes, 425 F.Supp. 1294, 1298-1300 (N.D.Cal.1977) (detailing section 514's legislative history), aff'd, 571 F.2d 502 (9th Cir.), cert. denied, 439 U.S. 831, 99 S.Ct. 108, 58 L.Ed.2d 125 (1978).
 
 
 32
 Section 514(a)'s scope, however, is not unlimited. The legislative choice of the word "regulate" in section 514's definitions suggests that the section was not designed to preempt state laws having only a tangential, non-regulatory effect on benefits plans. Had that been the design, less restrictive words such as "affect", "influence", or "connected with" would have been employed, or benefit plan administrators would have been given blanket immunity from the application of state law. Thus, there exists a "narrow category of laws which affect employee benefit plans but which do not relate to them within the meaning of § 514(a)." Stone v. Stone, 450 F.Supp. 919, 932 (N.D.Cal.1978) (emphasis added), aff'd, 632 F.2d 740 (9th Cir. 1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981). See also Zamborsky, 650 F.2d at 199-200.
 
 
 33
 In my opinion, the California levying statute falls within this narrow category of state laws. The state statute seeks only to secure payment of delinquent taxes and treats trust funds as merely another taxpayer asset the state may tap to achieve this aim. The statute does not regulate, directly or indirectly, plan reporting, disclosure, participation, funding, vesting, benefit calculation, or the trustees' fiduciary responsibilities.
 
 
 34
 The only "regulatory" effect the Trustees have identified is the administrative burden associated with processing levy notices. Similarly, the Department of Labor argues that tax levy statutes are preempted because of the administrative burden entailed in litigating a levy's validity. See ERISA Opinion Letter 79-90A, (1979-1981 Transfer Binder) Pens. Plan Guide (CCH) P 25,331. This effect is simply too minor to be considered "regulatory." If administrative inconvenience is alone sufficient to invoke section 514's preemptive operation, state income taxation of trust assets would also be preempted under the statute because preparing state tax forms is time-consuming and might involve litigation. Acceptance of the administrative inconvenience rationale would also require overruling prior Ninth Circuit precedent permitting attachment of pension fund benefits to satisfy marital support obligations because attachment also requires substantial administrative processing and might involve litigation. See Zamborsky, 650 F.2d at 199-200; Carpenter's Pension Trust v. Kronschnobel, 632 F.2d 745 (9th Cir. 1980); Stone, 632 F.2d at 742, cert. denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004.
 
 
 35
 It is also doubtful whether the state statute imposes a serious administrative burden on the Trustees. Employee benefit plans are currently subject to federal tax levies. See 26 C.F.R. § 1.401(a)-13(b)(2). Processing state tax levies should be no more exotic or burdensome.
 
 
 36
 Interpreting section 514(a) to preempt the California levying statute also raises grave constitutional difficulty. A state's taxing power is one of its attributes of sovereignty, existing independent of the Constitution and reserved under the Tenth Amendment except as conditioned by other provisions of the Constitution. See Railroad Co. v. Peniston, 85 U.S. (18 Wall.) 5, 29, 21 L.Ed. 787 (1873). A necessary incident of this power is the power to enforce uniformly the collection of a tax. See United States v. Hester, 137 F.2d 145, 147-48 (10th Cir. 1943). A finding of federal preemption here will pose a serious obstacle to the state's exercise of this power, casting doubt on section 514(a)'s constitutionality. The constitutional difficulty this construction creates provides an additional reason for construing section 514(a) not to preempt the California levying statute. See Lynch v. Overholser, 369 U.S. 705, 710-11, 82 S.Ct. 1063, 1067, 8 L.Ed.2d 211 (1962) (federal statutes are to be construed to avoid serious doubt of constitutionality); International Association of Machinists v. Street, 367 U.S. 740, 749, 81 S.Ct. 1784, 1789, 6 L.Ed.2d 1141 (1961) (same).
 
 
 37
 Assuming the district court possessed subject-matter jurisdiction, I would affirm the district court's judgment.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation
 
 
 [1]
 If the case were a challenge to a tax, 28 U.S.C. § 1341 would preclude removal jurisdiction. But here the state is challenging a trust created under a federal statute. A fiduciary under 29 U.S.C. § 1002(14)(A) has been sued and moved to remove the case to the district court. The trust has raised a federal question under ERISA and 29 U.S.C. § 1132 makes the amount in controversy immaterial
 
 
 [1]
 Admittedly, in determining the jurisdictional basis for removal, federal courts are not necessarily bound by how the plaintiff couches his claim. Sometimes federal law wholly displaces a plaintiff's state law remedies. In such cases, although a plaintiff purports to rely upon a state remedy, any right he possesses is based in federal law, conferring federal question jurisdiction over his action. See, e.g., Fristoe v. Reynolds Metal Co., 615 F.2d 1209, 1212 (9th Cir. 1980)
 This basis for removal jurisdiction was applied in Stone v. Stone, 632 F.2d 740 (9th Cir. 1980), cert. denied, 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981), to a state-based claim involving an ERISA issue. The plaintiff in Stone brought a state-created conversion action in state court against a pension plan, alleging that she owned a 40% community interest in the pension benefits of her divorced husband. Although her complaint based relief solely upon state law, the Ninth Circuit ruled that federal question jurisdiction supported removal because ERISA gave her standing as a plan "participant" to sue under ERISA § 502(a), 29 U.S.C. § 1132(a) (1976), to enforce a pension obligation. Stone, 632 F.2d at 743.
 Stone, however, does not extend to this case. ERISA § 502(a) confers standing only to plan participants, beneficiaries, fiduciaries, and the Secretary of Labor. Unlike the disappointed spouse in Stone, the Franchise Tax Board does not fall into any of these categories. If it has a remedy, it is state-created and not based upon ERISA. The rationale supporting removal jurisdiction is therefore absent here.
 
 
 [2]
 Section 514(a) provides:
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.
 29 U.S.C. § 1144(a) (1976).
 
 
 [3]
 Section 206(d)(1) provides in full:
 Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.
 29 U.S.C. § 1056(d)(1) (1976).