LOCAL UNION 212 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS VACATION TRUST FUND, et al., Plaintiffs,

v.

LOCAL 212 IBEW CREDIT UNION, Defendant.

No. C-1-81-738.

United States District Court, S.D. Ohio, W.D.

Nov. 1, 1982.

Robert I. Doggett, Cincinnati, Ohio, for plaintiffs.

Stephen C. Crowe, Milford, Ohio, for defendant.

## OPINION AND ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court upon briefs filed by the parties. There are no material questions of fact in dispute and the parties agree that the case may be decided on issues of law.

Plaintiff is a trust fund which was created on April 28, 1970 pursuant to an area-wide collective bargaining agreement between IBEW Local 212 and the Cincinnati Chapter of the National Electrical Contractors Association. The purpose behind establishing this fund was to accumulate vacation benefits for construction electricians in this area who may work for various electrical contractors pursuant to the collective bargaining agreement during any given year. The fund is operated by a Board of Trustees, half of whom are appointed by the local contractors and the other half by Local Union 212. Under the collective bargaining agreement, approximately 8% of an employee's gross pay is deducted by the employer and deposited with the fund on a monthly basis. On June 1 of each year, an employee receives those funds contributed on his behalf during the preceding year. The fund utilizes a fiscal year of May 1 through April 30. Dividends are also declared annually and paid out on a pro rata basis.

Defendant Credit Union is a judgment creditor of eight employee-beneficiaries of the Vacation Trust. On May 28, 1981, the defendant instituted proceedings in state court seeking to garnish those funds which were to be paid to the eight beneficiaries on June 1, 1981. The Administrator of the trust fund called a special meeting of the Board of Trustees for June 1, 1981. At that meeting, the trustees declared that the existing Trust Agreement should be interpreted as prohibiting both voluntary and involuntary assignments. To confirm this interpretation, they amended the Trust Agreement to include the following provision:

"Section 3.7-No Creditor Rights. No benefits or money payable from this trust fund shall be subject to any manner of anticipation, alienation, sale, transfer, assignment, pledge, incumbrance by any person claiming or entitled to benefits hereunder; nor shall any benefit payment nor the right to any benefit payment or any interest in this trust fund be subject to the seizure by any creditor of any person entitled to an interest herein under any execution, writ, or proceedings at law of in equity." (Ex. C to Affidavit of Anthony S. Carle, Doc. 5).

The fund answered the garnishment proceedings by claiming federal pre-emption and thereafter filed this suit in federal district court. The state court proceedings have been stayed pending a decision by this Court and the parties have agreed that funds subject to the garnishment actions will be segregated and held until further Order by this Court.

The question presented to this Court is whether the Employee Retirement Income Security Act (ERISA) precludes a creditor from garnishing funds held by a vacation trust fund on behalf of an employee. All parties apparently agree that the vacation trust fund is an "employee welfare benefit plan" as defined by ERISA, 29 U.S.C. § 1002(1)(A), and that it is therefore also an

"employee benefit plan" as described in 29 U.S.C. § 1002(3). It is likewise agreed that the fund is not an "employee pension plan" or "pension plan" as defined in 29 U.S.C. § 1002(2).

Plaintiff contends that ERISA's pre-emption provision precludes defendant from garnisheeing the funds in question. 29 U.S.C. § 1144(a) provides in pertinent part:

"(a) Except as provided in subsection (b) of this section, the provisions of this Title and Title IV . . . shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(2) and are not exempt under Section 1003(b)."

The plaintiff also relies on 29 U.S.C. § 1132(a), which gives plan trustees a federal cause of action to enjoin any act or practice which violates the terms of an employee benefit plan.

Defendant Credit Union finds support for its position in the following provision of ERISA:

29 U.S.C. § 1056(d)(1):

"Each *pension plan* shall provide that benefits provided under the plan may not be assigned or alienated." (emphasis added).

Because this provision is limited to pension plans, defendant argues that by negative implication ERISA therefore permits assignment or alienation, including garnishment, of an employee's interest in an employee welfare benefit plan.[1] In this regard, defendant also asserts that the lesser protection ERISA affords to employee welfare benefit plans generally, counsels against a finding of pre-emption in this instance.

In *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980), the United States Court of Appeals for the Sixth Circuit held that a creditor of an employee-beneficiary could not garnish the employee's benefits

---

1. We note also that Section 1051 specifically states:

This part [§§ 1051–1061] shall apply to any employee benefit plan described in Section 1003(a) of this title . . . *other than—*

(1) *an employee welfare benefit plan.* (emphasis added).

under a pension plan which was covered by ERISA. Based upon administrative interpretations of 29 U.S.C. § 1056(d)(1) and 26 U.S.C. § 401(a)(13)[2], the Court in *Buha* concluded that the anti-assignment and alienation language of § 1056(d)(1) includes involuntary encroachments such as garnishments. Accordingly, the Sixth Circuit held that the creditor could not reach the interest of an employee under a pension plan which contained an anti-alienation and assignment provision. Because *Buha* involved a pension plan and a clear intent on the part of Congress to protect an employees interest in such plans, the Court's decision is of limited assistance in a case involving an employee welfare benefit plan where such clear statutory guidance does not exist.

We are aware of only one federal case which has addressed the narrow issue presented by this case. In *Franchise Tax Board v. Construction Laborers, et al.,* 679 F.2d 1307 (9th Cir.1982), the United States Court of Appeals for the Ninth Circuit held that the California Franchise Tax Board could not levy against money held in trust for three employees under a vacation trust fund to collect unpaid income taxes. The trust in that case contained an anti-alienation clause as well as a provision that accumulated funds "shall be exempt from the claims of creditors or other claimants from all orders, decrees, garnishments, executions or other legal or equitable process or proceedings." While the majority acknowledged that ERISA does not expressly protect vacation trusts from creditors' claims as it does in the case of pension plans, the Court stated:

"Extending similar protection [to that of 29 U.S.C. § 1056(d)(1)] to vacation funds is consistent with the statute, however, if not demanded by it. Both types of ERISA plans have the same goal: to provide accumulated money to a worker for future beneficial use. The worker's money deserves trust protection from dissipation regardless of the purpose for which mon-

ey has been set aside under ERISA." *Id.* at 1309.

The Court in *Franchise Tax Bd.* relied primarily on the pre-emption provision in ERISA which includes all employee benefit plans within its coverage, as well as the broad scope given that section by the United States Supreme Court in *Alessi v. Raybestos-Manhattan,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981). Judge Tang dissented, contending that the levying statute did not conflict with any express or implied provision of ERISA and that ERISA's purposes did not mandate implication of such protection for employee welfare benefit plans. 679 F.2d at 1310–11. Judge Tang also distinguished *Alessi* by noting that in this case there was no direct conflict between a state statute and Congressional intent, since nothing in ERISA or its legislative history revealed Congress' intention toward state levying statutes. *Id.* at 1311. The dissent also rejected pre-emption under § 1144(a), stating:

"Section 514(a)'s [1144(a)] scope, however, is not unlimited. The legislative choice of the word 'regulate' in Section 514's definitions suggests that the section was not designated to preempt state laws having only a tangential, non-regulatory effect on benefits plans.... In my opinion, the California levying statute falls within this narrow category of state laws. The state statute seeks only to secure payment of delinquent taxes and treats trust funds as merely another taxpayer asset the state may tap to achieve this aim. The statute does not regulate, either directly or indirectly, plan reporting, disclosure, participation, funding, vesting, benefit calculation, or the trustees' fiduciary responsibilities."

■ We agree with Judge Tang that 29 U.S.C. § 1056(d)(1) offers no protection to the Vacation Trust Fund in this case. That section is expressly limited to pension plans and we decline to extend it to employ-

---

**2.** This section of the Internal Revenue Code requires a plan to contain an anti-alienation/assignment provision in order to constitute a "qualified" trust entitled to exemption under

§ 401. Plaintiff in this case, however, was granted exemption from federal tax under 26 U.S.C. § 501(c)(9).

ee welfare benefit plans. This conclusion is consistent with ERISA's overall preference for pension benefits in affording statutory protection. *See e.g.,* 29 U.S.C. §§ 1052, 1053 (minimum participation and vesting standards required for pension benefit plans under ERISA). The question remains, however, whether ERISA's concededly broad pre-emption provision shields an employee welfare benefit plan which, although not required by statute to do so, prohibits garnishment by a beneficiaries' creditors.[3]

*Alessi v. Raybestos-Manhattan,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), involved a challenge to the New Jersey legislature's amendment of its Worker's Compensation Act to prohibit offsets of an employees' retirement pension benefit by amounts awarded the employee under Worker's Compensation. After their pensions were reduced, plaintiffs sued two pension plans which specifically provided for such offsets alleging violations of the New Jersey Statute. The defendants removed the cases to federal court claiming federal pre-emption. The Supreme Court first held that ERISA itself did not prohibit such offsets, but rather contemplated and approved similar types of "integration." In this regard, the Court relied upon ERISA's legislative history as well as administrative regulations specifically sanctioning plans which contain such offset provisions. *Id.* at 514–521, 101 S.Ct. at 1901–05.

The Court went on to uphold defendant's pre-emption claim, reasoning that the New Jersey statute "related to" pension plans governed by ERISA because it eliminated one method of calculating pension benefits—integration—which was permitted under federal law. *Id.* at 524, 101 S.Ct. at 1906.

We conclude that ERISA does not pre-empt state garnishment proceedings against funds held in a Vacation Trust.

Although ERISA specifically protects an employee's interest in a pension plan from such encroachment, 29 U.S.C. § 1056(d)(1); *General Motors Corp. v. Buha,* 623 F.2d 455 (6th Cir.1980), there is no indication either in the statute itself or in the legislative history which indicates a similar concern for vacation trusts or other types of welfare benefit plans. As Judge Tang pointed out: "This difference in concern should not be surprising. In real world terms, the loss of one's pension is far more catastrophic than the loss of funds devoted to financing an annual vacation." 679 F.2d at 1311.

Unlike *Alessi,* where the Supreme Court found ample evidence of Congress' intent to permit the kind of offsets prohibited by state statute, we find no evidence whatsoever here of an intent on the part of Congress to protect employee welfare benefit plans from garnishment proceedings by a beneficiary's creditors. We decline to read *Alessi* as holding that any provision of an employee benefit plan which is not prohibited by ERISA is therefore automatically protected under ERISA's pre-emption provision. In order for pre-emption to even come into play, there must be some express or implied provision of ERISA which addresses the matter.[4] In this instance, we can find none.

We also doubt that the garnishment statute involved here can be fairly said to "relate to" any employee benefit plan. The only "regulatory" effect which can be identified is the administrative expense the fund may incur in processing the garnishment notices. We consider this "regulatory" effect minimal and therefore insufficient to invoke ERISA's preemption provision. *See Franchise Tax Bd., Etc. v. Construction Laborers, Etc.,* 679 F.2d at 1312 (Tang, J. dissenting).

Accordingly, we hold that ERISA does not preempt the garnishment proceedings

---

**3.** Plaintiff contends that the original Trust Agreement should also be interpreted as precluding garnishment. Without deciding this question, we accept plaintiffs' position for purposes of this discussion.

**4.** Section 1144(a) states

"Except as provided in subsection (b) of this section, *the provisions of this subchapter* [§§ 1001–1144] ... shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan..." (emphasis added).

instituted by defendant in the state court. The effect of the Creditor's Rights provision subsequently added to the Trust Agreement as well as construction of the unamended Trust Agreement are questions for the state court to decide as a matter of state law.

IT IS SO ORDERED.