ARIZONA LABORERS, TEAMSTERS, AND CEMENT MASONS, LOCAL 395 PENSION TRUST FUND, et al., Plaintiffs,

v.

Samuel NEVAREZ et al., Defendants.

CIV 86–1973 to 86–1975 PHX RCB, CIV 86–1990 PHX RCB.

United States District Court,
D. Arizona.

May 19, 1987.

**366**

Daniel F. Gruender, James M. Nelson, Keith F. Overholt, Shimmel, Hill, Bishop & Gruender, P.C., Phoenix, Ariz., for plaintiffs.

Philip W. Messinger, Deputy Maricopa Co. Atty., Support Enforcement Unit, Phoenix, Ariz., for defendant/judgment creditors Ophelia Marie Moya, Alice Vasquez, and Geneice Center.

Robert Bushor, Tempe, Ariz., for defendant/judgment creditor Ernestine W. Noel.

Herman Alcantar, Phoenix, Ariz., for defendant/judgment debtor Samuel Nevarez.

Peter Moya, pro se.

Wilson Noel, pro se.

Defendant Benny Center, pro se.

ORDER

BROOMFIELD, District Judge.

Plaintiffs and defendants filed crossed motions for summary judgment pursuant to Fed.R.Civ.P. 56. There being no genuine issue of material fact, the court finds summary judgment is proper in this case.

The facts of this case are not in dispute. Plaintiffs are six trust funds created under and governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* Plaintiff Arizona Laborers, Teamsters, and Cement Masons, Local 395 (ALTCM) has three trust funds involved:

ALTCM Pension Trust Fund, ALTCM Health and Welfare Trust Fund, and ALTCM Vacation and Savings Trust Fund. Plaintiff Arizona State Carpenters also has three trust funds involved: Arizona State Carpenters Pension Trust Fund, Arizona State Carpenters Health and Welfare Trust Fund, and Arizona State Carpenters Vacation and Savings Trust Fund.

The defendants in this action are participants in the above pension plans or former spouses of the participants. The former spouses of the participants are judgment creditors of the participants. The former spouses obtained judgments in the Superior Court of Arizona in Maricopa County against the participants for failure to make required alimony and child support payments. They subsequently obtained writs of garnishment pursuant to Ariz.Rev.Stat. Ann. § 12–1570 *et seq.* (West Supp.1986) which they served upon the trust funds. The writs sought to collect the child support and alimony arrearages owed by the participant spouses from the monies that the trust funds held for the participant spouses. The judgment creditor spouses served the Superior Court judgments on the trust funds along with the writs of garnishment.

Defendants Ernestine Noel and Wilson Noel differ from the other defendants because they are still married. Ernestine Noel claims both a community property and a contractual interest in her husband's share of the trust funds. They entered into a post-nuptial agreement on December 21, 1979. Under the agreement, Wilson Noel agreed to provide monetary support for Ernestine as well as convey an interest to her in certain items of his property. Ernestine sued Wilson for breach of this agreement and obtained a default judgment against him in the Superior Court in Maricopa County on October 26, 1983. Like the other non-participant spouses, she instituted garnishment proceedings against the trust funds to execute the judgment.

After receiving the writs of garnishment, the plaintiffs filed this action seeking declaratory and injunctive relief. They seek a declaration that they are exempt from the state garnishment proceedings because ERISA and the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, preempts such a state proceeding. In addition, they seek a permanent injunction en-

joining the state garnishment action against them.

The plaintiffs contend ERISA's preemption provision, 29 U.S.C. § 1144(a), and anti-alienation provision, 29 U.S.C. § 1056(d)(1), preclude the garnishment of the trust funds involved. The trust funds in this case fall into two distinct categories under ERISA. The ALTCM Pension Trust Fund and the Arizona State Carpenters Pension Trust Fund constitute an "employee pension benefit plan" or "pension plan" under 29 U.S.C. § 1002(2). In contrast, the ALTCM and the Arizona State Carpenters Health & Welfare Trust Fund and the Vacation & Savings Trust Fund constitute an "employee welfare benefit plan" or "welfare plan" under 29 U.S.C. § 1002(1). Thus, the court must address each type of plan individually (i.e., the pension plan and the welfare plan) in determining whether ERISA and the NLRA preempt the state garnishment proceeding.

### I. The Pension Plans

The Ninth Circuit previously considered whether ERISA preempted state garnishment proceedings against a pension fund. In *Operating Engineers Local No. 428 v. Zamborsky*, 650 F.2d 196, 200–201 (9th Cir. 1981), the court held a state law which allows an individual to garnish an ex-spouse's pension benefits is impliedly excepted from ERISA's preemption and anti-alienation provisions. The court noted that allowing spousal and child support garnishment did not frustrate the Congressional intent behind these two provisions of ERISA. *Id.* at 201. The court reasoned that Congress did not intend to provide a means by which an individual could effectively frustrate the enforcement of a court ordered spousal support obligation. *Id.*

Subsequent to *Zamborsky*, Congress enacted the Retirement Equity Act of 1984 (REA), Pub.L. 98–397; 98 Stat. 1426, which amended ERISA. These amendments limit the scope of the implied domestic relations exception *Zamborsky* read into the statute. By amending ERISA with regard to support obligations, Congress' intention was to clarify when ERISA's preemption and anti-

alienation provisions do and do not apply to family support obligations. Congress wished to provide guidelines for determining whether the exception to the above provisions apply. *See* S.Rep. No. 575, 98th Cong., *reprinted in* 1984 U.S.Code Cong. & Admin.News 2547, 2564–65.

Under the REA amendments to ERISA there is a distinction between a "qualified domestic relations order" (QDRO) and a "domestic relations order." *See* 29 U.S.C. § 1056(d)(3)(B). A QDRO is a domestic relations order "which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan," and meets certain other requirements specified in 29 U.S.C. § 1056(d)(3)(C) & (D). *See* 29 U.S.C. § 1056(d)(3)(B)(i) and 1984 U.S.Code Cong. & Admin.News at 2566. In contrast, a domestic relations order is "any judgment, decree, or order ... which relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child or other dependent of a participant, and is made pursuant to a State domestic relations law (including a community property law)." *See* 29 U.S.C. § 1056(d)(3)(B)(ii) and 1984 U.S.Code Cong. & Admin.News at 2546. An exception exists only for QDRO's under ERISA's anti-alienation and preemption provisions. *See* 29 U.S.C. §§ 1056(d)(3)(A) and 1144(b)(7). *See also* 1984 U.S.Code Cong. & Admin.News at 2565. Therefore, ERISA's anti-alienation and preemption provisions do not apply to the judgments in this case if they are QDRO's. The court must therefore determine whether the judgments here constitute QDRO's and thus fall within the exception to the above provisions.

29 U.S.C. § 1056(d)(3)(C) & (D) specifies the requirements for a QDRO. The order must clearly specify:

1. The name and last known mailing address (if available) of the participant and the name and address of each alternate payee to which the order relates,

2. The amount or percentage of the participant's benefits to be paid to an alter-

nate payee or the manner in which the amount is to be determined,

3. The number of payments or period for which payments are required, and

4. The plan to which the order applies. (With respect to this fourth requirement, Congress intended that a QDRO remains qualified regarding a successor plan of the same employer or a plan of a successor employer.)

1984 U.S.Code Cong. & Admin.News at 2566. The order still qualifies as a QDRO even if it fails to specify the current mailing address of the participant and alternate payee if the plan administrator knows the address independently of the order. *Id.*

■ The judgments in this case fail to meet the requirements of a QDRO. None of the orders involved meet any of the above requirements.[1] Therefore, they do not fall within the exception to ERISA's anti-alienation and preemption provisions. Consequently, the judgment creditor spouses cannot garnish the ALTCM Pension Trust Fund or the Arizona State Carpenters Pension Trust Fund because 29 U.S.C. § 1144(a) preempts such a state garnishment proceeding. Furthermore, 29 U.S.C. § 1056(d)(1) precludes the alienation of such pension benefits.

This conclusion does not mean that the judgment creditor spouses cannot ever reach their ex-spouses' pension benefits. Nothing precludes them from going back to the Superior Court to seek an order which qualifies as a QDRO.

## II. The Welfare Plans (the Health & Welfare Trust Fund and the Vacation & Savings Trust Fund)

As the REA amendments to ERISA indicate Congress' intent to preempt state gar-

nishment of ERISA covered pension plans pursuant to a state domestic relations order unless the order is a QDRO, the next issue is whether these amendments indicate a congressional intent to preempt state garnishment of ERISA covered welfare plans such as the health and welfare funds and vacation and savings funds involved in this case. Before addressing this issue however, the court must determine whether ERISA's anti-alienation provision, 29 U.S.C. § 1056(d)(1), covers employee welfare benefit plans.

The plaintiffs contend § 1056(d)(1) covers welfare plans. They rely on *Franchise Tax Bd. of the St. of California v. Construction Laborers Vacation Trust For So. Calif.*, 679 F.2d 1307 (9th Cir.1982) to assert this proposition. In that case, the court held the anti-alienation provision applied to a vacation savings trust fund. *Id.* at 1309. The court reasoned although ERISA did not protect vacation trusts from creditors' claims, as it protects pension plans, extending similar protection to vacation funds is consistent with the statute. *Id.*

Plaintiffs' reliance upon *Franchise Tax Board* is misplaced. The United States Supreme Court vacated the Ninth Circuit's opinion. *Franchise Tax Board of the St. of Calif. v. Construction Laborers Vacation Trust For So. Calif.*, 463 U.S. 1, 4, 103 S.Ct. 2841, 2843, 77 L.Ed.2d 420 (1983). The Court vacated the Ninth Circuit's opinion on jurisdictional grounds. The *Franchise Tax Board* case originated in state court, but the trust fund removed it to federal court. The Supreme Court held the case was not within the removal jurisdiction conferred by 28 U.S.C. § 1441 and

---

1. Defendants argue that the Arizona garnishment statute itself constitutes a QDRO or at least results in one. Though creative, the argument fails. § 1056(d)(3)(C) and (D) is explicit in its requirements and establishes what an order must contain to constitute a QDRO. A state garnishment statute is no order and will not suffice.

Ernestine Noel claims her case is different from the other non-participant spouses seeking to levy a writ of garnishment on the trust funds. She claims she is an alternate payee under

ERISA due to her community property interest and the rights she obtained through the postnuptial agreement. Therefore, she concludes she may continue the garnishment proceedings against the pension funds. Mrs. Noel may well be an alternate payee under ERISA, but the judgment she obtained does not constitute a QDRO. Consequently, she cannot seek to levy a writ of garnishment against the pension funds until she obtains an order which qualifies as a QDRO.

therefore the federal court lacked jurisdiction to consider the anti-alienation and preemption questions. *Id.* at 7, 103 S.Ct. at 2845.

The plaintiffs' contention that the Supreme Court reversed the Ninth Circuit decision on other grounds is misleading and without merit. A vacated decision has no precedential or authoritative effect.[2] Consequently, this court must determine the scope of 29 U.S.C. § 1056(d)(1) as if the matter was one of first impression in the Ninth Circuit.

Judge Tang authored a strong dissent in the Ninth Circuit's *Franchise Tax Board* decision. *See* 679 F.2d at 1309 (Tang, J. dissenting). He contended 29 U.S.C. § 1056(d)(1) applied only to pension funds and not to welfare plans. *Id.* at 1310. The Sixth Circuit adopted Judge Tang's view in *Local Union 212, IBEW Vacation Trust Fund v. Local 212 IBEW Credit Union,* 735 F.2d 1010, 1011 (6th Cir.1984) (IBEW # 1). In that case, the Sixth Circuit adopted the district court's opinion, *Local Union 211, IBEW Vacation Trust Fund v. Local 212 IBEW Credit Union,* 549 F.Supp. 1299 (S.D.OH 1982) (IBEW # 2), as its own opinion. *IBEW #1* at 1011. The district court agreed with Judge Tang and held that 29 U.S.C. § 1056(d)(1) is expressly limited to pension plans. The court declined to extend it to welfare plans. *IBEW #2* at 1301-2.

Several bases exist for concluding that ERISA's anti-alienation provision does not cover welfare plans. First, the language of 29 U.S.C. § 1056(d)(1) expressly states it governs pension plans. A reasonable inference from this language is that the care Congress exercised in drafting 29 U.S.C. § 1056(d)(1) shows Congress did not intend to create an implied anti-alienation restriction for welfare plans. Support for this conclusion exists due to ERISA's strict distinction between "pension plans" and "welfare plans" and due to 29 U.S.C. § 1051(1) which excludes welfare plans from the statutory part containing the anti-alienation provision. *See Franchise Tax Board,* 679 F.2d at 1310-11 (Tang, J. dissenting) and *IBEW # 2* at 1301-2.

Second, there is no support in the legislative history of ERISA regarding a congressional intent to protect welfare plans from garnishment, attachment, and levy. *Id.*

Finally, ERISA's purpose does not require implying an anti-alienation restriction for welfare plans. Support for this conclusion stems from ERISA's limited regulation of welfare plans as opposed to the heavy regulation of pension benefits. This difference in regulation strongly suggests Congress was greatly concerned with the possible dissipation of pension benefits rather than the possible loss of employee welfare benefits. *Id.* That wise social policy would seek to protect employees from the early dissipation of their retirement benefits intended to insure self-sufficiency and preclude reliance on governmental or other resources in their later years but treat vacation or health care benefits intended for more concurrent use, does not seem imprudent. It was for Congress to enact that social policy and it appears that it did.

The legislative history of the REA confirms Judge Tang's and the Sixth Circuit's view that ERISA's anti-alienation provision only applies to pension plans. The Senate Finance Committee's report clearly states the purpose of the amendments was to improve the delivery of "retirement" benefits and provide for greater equity under private "pension" plans for workers, their spouses and their dependents. 1984 U.S.Code Cong. & Adm.News at 2547.

Based upon the above case law and legislative history, the court finds 29 U.S.C. § 1056(d)(1) does not cover welfare plans. This anti-alienation provision covers only pension plans.[3]

---

2. *In re Daniel v. Security Pacific Nat'l Bank,* 771 F.2d 1352, 1361 n. 19 (9th Cir.1985), and *Misic v. Building Service Employees Health and Welfare Trust,* 789 F.2d 1374, 1377 n. 2 (9th Cir.1986).

3. Recently, the Ninth Circuit held ERISA's anti-alienation provision does not forbid assignment by a beneficiary of his right to reimbursement under a health welfare plan to a health care provider. *Misic v. Building Service Employees*

**370**

Next, the court must determine whether ERISA's broad preemption provision preempts the state garnishment action against the welfare plans involved here. The district court in *IBEW #2* held ERISA did not preempt state garnishment proceedings against funds held in a vacation savings trust fund. 549 F.Supp. at 1302, *aff'd.*, 735 F.2d at 1011. Although the court's holding is limited to vacation savings funds, this holding logically includes health and welfare funds. 29 U.S.C. § 1002(1) categorizes both vacation savings funds and health and welfare funds as welfare plans.

In holding 29 U.S.C. § 1144(a) did not preempt state garnishment proceedings against welfare plans, the district court relied on Judge Tang's dissent in *Franchise Tax Board. IBEW #2* at 1302–3. *See also* 679 F.2d at 1311–12. The district court noted that for preemption to apply there must be some express or implied provision of ERISA which addresses the matter involved. The court could not find any such provision. 549 F.Supp. at 1302. Since the *IBEW #2* court's decision, the REA added an exception to ERISA's preemption provision. 29 U.S.C. § 1144(b)(7) excludes QDRO's from ERISA's preemptive scope. Thus, at first glance, it appears there is now an express provision of ERISA which addresses the matter before this court, i.e., the garnishment of a welfare plan pursuant to a domestic relations judgment. This is not the case however. The REA amendments regarding QDRO's relate *only* to pension plans. The legislative history confirms this view. *See* 1984 U.S.Code Cong. & Adm.News at 2547. Therefore, there is still no express or implied provision of ERISA which provides for preemption of state garnishment actions against a welfare plan. This conclusion is consistent with the intent of Congress. Congress provided specific protections regarding employee interests in pension plans. There is no indication in the statute or legislative history which demon-

strates a similar concern regarding welfare plans. This difference in Congress' concern does not surprise the court. For as Judge Tang so appropriately stated, "In real world terms, the loss of one's pension is far more catastrophic than the loss of funds devoted to financing an annual vacation." 679 F.2d at 1311. *See also IBEW #2*, 549 F.Supp. at 1302.

■ Based upon the above case law and legislative history, the court therefore concludes that ERISA does not preempt a state garnishment action against a welfare plan.

### III. Preemption Under the NLRA

The collective bargaining agreement between the ALTCM or Arizona State Carpenters and the various signatory employers governs the amount of employer contributions to the various trust funds involved here. The NLRA covers the collective bargaining agreements entered into between the parties. Consequently, the plaintiffs contend since the collective bargaining agreements govern the employer contributions, the NLRA preempts any state garnishment action against the pension funds or welfare plans here. They rely on *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), to assert this proposition.

*Allis-Chalmers* held that the NLRA preempts a state law claim when resolution of the claim is substantially dependent upon analysis of a collective bargaining agreement's terms. *Id.* at 220, 105 S.Ct. at 1916. The plaintiffs argue the state garnishment action requires extensive interpretation of the collective bargaining agreements involved here. Thus, they conclude the NLRA preempts the state garnishment action.

■ The court is not persuaded by plaintiffs' argument. The state garnishment action here presents no problem of contract interpretation. The action does not at-

---

*Health and Welfare Trust, supra,* at 1377. In that case the court noted the anti-alienation provision's goal was to ensure the availability of an employee's benefits for retirement purposes.

In reaching this conclusion, the court examined the legislative history of ERISA. The legislative history of REA confirms the view that 29 U.S.C. § 1056(d)(1) only applies to pension plans.

tempt to define the meaning of the collective bargaining agreements' terms. The agreements only specify the amounts each signatory employer must contribute to each fund for an employee covered by the bargaining agreement. Here, the state garnishment action's only concern is the garnishment of all or a portion of the amount contributed by the employer for the participant spouse. The action does not purport to define the meaning of any of the bargaining agreements' terms. Thus, the NLRA does not preempt the garnishment action. *Id.* at 212, 105 S.Ct. at 1912.

The NLRA does not preempt every dispute tangentially involving a collective bargaining agreement provision. *Id.* at 210, 105 S.Ct. at 1911. Arizona law creates the right to collect and the obligation to pay family support. Thus, this right and obligation exists independently of the bargaining agreements. The agreements did not create the right of the spouses and children to alimony and child support. No question of contract interpretation exists here regarding the existence of a family support obligation. State law rights and obligations which exist independently of a collective bargaining agreement are not preempted under the NLRA. *Id.* at 212, 105 S.Ct. at 1912. Thus, the NLRA does not preempt the state garnishment action against the pension funds and welfare funds here.

IT IS ORDER declaring that the domestic relations orders here are not qualified domestic relations orders and therefore ERISA preempts the state garnishment action against the ALTCM pension trust fund and the Arizona State Carpenters pension trust fund.

IT IS FURTHER ORDERED enjoining the parties from pursuing the state garnishment action against the ALTCM pension trust fund and the Arizona State Carpenters Pension Trust Fund pursuant to the state court judgments the judgment creditor spouses now possess.

IT IS FURTHER ORDERED declaring that ERISA's preemption and anti-alienation provisions do not apply to employee welfare benefit plans and therefore ERISA does not preempt the state garnishment action against the ALTCM Health and Welfare Trust Fund, the ALTCM Vacation and Savings Trust Fund, the Arizona State Carpenters Health and Welfare Trust Fund, and the Arizona State Carpenters Vacation and Savings Trust Fund.

IT IS FURTHER ORDERED vacating this court's preliminary injunction enjoining the parties from pursuing the state garnishment action against the ALTCM Health and Welfare Trust Fund, the ALTCM Vacation and Savings Trust Fund, the Arizona State Carpenters Health and Welfare Trust Fund, and the Arizona State Carpenters Vacation and Savings Trust Fund.

IT IS FURTHER ORDERED declaring that the NLRA does not preempt the state garnishment action against either the pension funds and the welfare plans involved here.