**In re J.A. VOLPE, M.D. and wife, Rita Ann Volpe, Debtor(s).**

**No. 88–11850.**

United States Bankruptcy Court,
W.D. Texas,
Austin Division.

April 28, 1989.

---

William C. Davidson, Austin, Tex., for debtor.

Joanalys Smith, Austin, Tex., for creditor.

Harvey D. Caughey, Austin, Tex., trustee.

## MEMORANDUM OPINION DETERMINING THE EXEMPTION OF DEBTORS' QUALIFIED EMPLOYEE PROFIT SHARING PLAN AND INDIVIDUAL RETIREMENT ACCOUNTS

LARRY E. KELLY, Chief Judge.

On December 12, 1988 came on to be heard the timely filed Objection of NCNB—Texas National Bank ("NCNB") to certain personal property claimed to be exempt by Dr. and Mrs. Volpe ("Debtors"). After considering evidence and argument of counsel this issue was taken under advisement. This Memorandum Opinion is intended to provide Findings of Fact and Conclusions of Law as required by Bankruptcy Rules 9014 and 7052. The Court has jurisdiction over this proceeding as a core matter under 28 U.S.C. § 157(b)(2)(B).

### I. BACKGROUND

1.01 The Debtors filed this voluntary petition under Chapter 7 of the Bankruptcy Code on June 28, 1988.

1.02 Among the personal property assets listed in the Debtor's schedules were the following:

a. An Austin Diagnostic Center Profit Sharing account ("ADC–Plan") at NCNB in the name of Joseph A. Volpe, containing $457,865.00;

b. Two Individual Retirement Accounts ("IRA") in the name of Joseph A. Volpe, one at NCNB and one at Windsor Savings, and jointly containing $5,974.00;

c. Five IRA accounts in the name of Rita Ann Volpe, four at NCNB and one at Windsor Savings, and jointly containing $14,914.00.

1.03 The Debtors listed each of these accounts in their Schedule B–4, claiming them as exempt under 11 U.S.C. § 522(b)(2)

and Texas Property Code §§ 42.001 and 42.0021 (Vernon 1984 and Vernon Supp. 1989). ("T.P.C. § 42.0021").

1.04 On September 6, 1988, NCNB filed its Objection to the Debtors' Claimed Exemption of these accounts on the grounds that:

a. Debtors were attempting to exempt several accounts when the applicable state law only allows a "single account or plan"; and

b. The intent of the Texas Legislature was to protect "retirement benefits" and the establishment by debtors of multiple IRA accounts indicated that the ADC–Plan was not intended to be a retirement benefit account and therefore it is not protected by T.P.C. § 42.0021.

1.05 On November 18, 1988, Judge Leif M. Clark of this District encountered a similar objection in a case appearing before him. He rendered an opinion that the Debtor's retirement plan was not exempt because T.P.C. § 42.0021 was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 88 Stat. 829, as amended, 29 U.S.C. § 1001, et seq.[1] Although Judge Clark has subsequently withdrawn that opinion pending reconsideration, NCNB at the hearing on its objection broadened the grounds to include an assertion that T.P.C. § 42.0021 is preempted by ERISA.

1.06 The parties stipulated at the hearing that:

a. The ADC–Plan profit sharing plan was ERISA qualified;

b. The seven IRA accounts listed in the Debtors' B–4 Schedules were certificates of deposit;

c. The IRA accounts are qualified under the applicable provisions of the Internal Revenue Code; and

d. Dr. Volpe is a shareholder in Austin Diagnostic Center.

1.07 Briefs were submitted after the hearing which further argued in part that the Debtors' interest in the ADC–Plan is or is not property of the estate. However, no stipulations, exhibits, or testimony was introduced at the hearing to inform the Court whether Dr. Volpe was an officer or director of Austin Diagnostic Clinic, a trustee of the ADC–Plan, or had any control over any feature of the Plan or the proceeds at issue. The only "evidence" is the sworn statements contained in Debtors' schedules describing the ADC–Plan and IRA's as being property of the estate.

## II. ISSUES

2.01 Does T.P.C. § 42.0021 "relate" to ERISA so that it is preempted in whole or in part?

2.02 Does T.P.C. § 42.0021 allow a debtor to exempt only one IRA account, one Keough Plan or one profit sharing plan account as contended by NCNB?

2.03 If ERISA preempts T.P.C. § 42.0021, does it also preempt the Texas Spendthrift Trust Statute so as to require 11 U.S.C. § 541(c)(2) to be interpreted in such a way as to keep the ADC–Plan from being considered as "property of the estate"?

## III. GENERAL DISCUSSION

3.01 As stated by one court, "The Erisa quicksand is fast swallowing up everything that steps in it or near it."[2] After finishing its work on this case, this Court is not sure that quicksand is all that it has stepped into. The issues before the Court are complicated because of the less than clear interplay between certain provisions of ERISA, the Bankruptcy Code, and the Texas Property Code. It is necessary to review certain of these provisions prior to addressing the specific issues in controversy.

3.02 In response to a national concern about loss of private pension benefits resulting from financial difficulties of em-

---

**1.** *In re Harvey Komet and Eleanor B. Komet,* 93 B.R. 498 (Bankr.W.D.Tex., 1988), withdrawn, reh'g granted.

**2.** *Jordan v. Reliable Life Ins. Co.,* 694 F.Supp. 822 (N.D.Ala.1988).

ployers and job mobility of employees,[3] Congress enacted ERISA. This Act governs two types of employee benefit plans: (1) "Employee Pension Benefit Plans," which provide retirement or deferred income to employees, and (2) "Employee Welfare Benefit Plans," which provides fringe benefits such as medical and life insurance to Plan participants.

3.03   ERISA imposes upon pension plans a variety of substantive requirements relating to participation, funding, and vesting. 29 U.S.C. § 1051–1086.  It also establishes various uniform procedural standards concerning reporting, disclosure, and fiduciary responsibility for both pension and welfare plans.   29 U.S.C. §§ 1021–1031, §§ 1101–1114.

3.04   To eliminate state interference with the accomplishment of ERISA's goals, Congress included preemption language in the statute.   There are three provisions relating to the preemptive effect of the federal legislation:

a.   "Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter shall supersede any and all state laws insofar as they now or hereafter *relate* to any employee benefit plan ..."

§ 514(a), as set forth at 29 U.S.C. § 1144(a) (preemption clause).

b.   "Except as provided in sub-paragraph (B) [the Deemer Clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities."

§ 514(b)(2)(A), as set forth at 29 U.S.C. § 1144(b)(2)(A) (savings clause).

c.   "Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any state purporting to regulate insur-

ance companies, insurance contracts, banks, trust companies or investment companies."

§ 514(b)(2)(B), as set forth at 29 U.S.C. § 1144(b)(2)(B) (deemer clause).

3.05   The United States Supreme Court has summarized the "pure mechanics" of these three provisions as follows:

"If a state law 'relates to ... employee benefit plans,' it is preempted.   § 514(a). The saving clause exempts from the preemption clause, laws that 'regulate insurance'.   § 514(b)(2)(A).   The deemer clause makes clear that a state law that 'purports to regulate insurance' cannot deem an employee benefit plan to be an insurance company."   § 514(b)(2)(B).

*Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

3.06   ERISA also has a specific provision for pension plans which establishes a prohibition against assignment or alienation of plan benefits.   § 401(a) of ERISA as set forth at 29 U.S.C. § 1056(d) provides:

"(1) Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated."

There are certain exceptions contained in subparagraphs (2) and (3) of 29 U.S.C. § 1056(d) which are not pertinent to our inquiry at this time and this provision is not applicable to employee welfare benefit plans.

3.07   Two provisions in the Bankruptcy Code ("Code") are also relevant.

a.   Code § 541 provides that upon commencement of an action in bankruptcy, all property of the debtor becomes property of the bankruptcy estate.   An exception to this all inclusive language is found in Code § 541(c)(2):

"A restriction on a transfer of a beneficial interest of the debtor in a trust that is *enforceable under applicable non-bankruptcy law* is enforceable in a case under this title."   (emphasis added).

---

**3.**  See ERISA Preemption of State Law: The Meaning of "Relate to" in § 514, Washington

b. Once property is determined to be in the bankruptcy estate, the debtor is allowed to exempt from it certain eligible property. Code § 522(b) provides that individual states are provided with a choice of allowing their debtors two methods of exempting property (state exemptions or federal exemptions) or only one method (state exemptions). Code § 522(b) provides:

"Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection. In joint cases filed under section 302 of this title and individual cases filed under section 301 or 303 of this title by or against debtors who are husband and wife, and whose estates are ordered to be jointly administered under Rule 1015(b) of the Bankruptcy Rules, one debtor may not elect to exempt property listed in paragraph (1) and the other debtor elect to exempt property listed in paragraph (2) of this subsection. If the parties cannot agree on the alternative to be elected, they shall be deemed to elect paragraph (1), where such election is permitted under the law of the jurisdiction where the case is filed. Such property is—

(1) property that is specified under subsection (d) of this section, unless the State law that is applicable to the debtor under paragraph (2)(A) of this subsection specifically does not so authorize; or, in the alternative,

(2)(A) any property that is *exempt under Federal law*, other than subsection (d) of this section, *or State or local law* that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; (emphasis added)

(B) any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable non-bankruptcy law."

The State of Texas has not enacted any law to preclude its debtors from choosing between "state exemptions" or the "federal exemptions" of Code § 522(d). In this case the Volpe's have elected "state exemptions" in Code § 522(b)(2)(A).

3.08 One cannot truly understand the controversy at issue in this case without also being aware of a Fifth Circuit decision, *In the Matter of Goff*, 706 F.2d 574 (5th Cir.1983), and the Texas Legislature's response to that decision (and perhaps to other problems in the pension plan/creditor area) which is codified as T.P.C. § 42.0021.

a. In 1980, Dr. Elbert Wayne Goff and wife filed bankruptcy. They sought to retain their interest in a self-employed retirement ("Keough") plan under Code § 541(c)(2) of the Code. The Goffs argued that the reference in that section to applicable non-bankruptcy law was intended to reach broadly and contended that such section exempted all pension trusts qualified under ERISA because of ERISA's restriction on assignment and alienation of qualified trusts. *Goff* at 576–77. The Fifth Circuit held that "Congress did not evidence an intent, by reference to 'applicable non-bankruptcy law' to include an ERISA plan exemption." *Goff* at 580. The opinion went on to conclude that the reference in Code § 541(c)(2) to "applicable non-bankruptcy law" was an acknowledgement of traditional state spendthrift trust law, and not of ERISA.

b. The Goffs did not argue in the alternative that if their interest in the plan was included in the property of the estate, that they would be eligible to exempt it under Code § 522(b), the "state exemptions" provision. When the "state exemptions" are chosen, a debtor may also exempt property pursuant to "federal law other than subsection (d)." Code § 522(b)(2)(A). Even though the Goffs did not attempt to claim their ERISA qualified Keough plans under this other "federal law exemption", the Fifth Circuit went on to analyze the issue.

They concluded that "... Congress did not intend to include ERISA-qualified plans among those items otherwise 'exempt under federal law', pursuant to 11 U.S.C. § 522(b)(2)(A)." *Goff* at 585.

c. The Fifth Circuit concluded that the debtor's interest in the Keough plans could be protected only if it met the "spendthrift trust" exemption of Code § 541(c)(2). That analysis was held to depend solely on state law and because Dr. Goff's plan was held to be a self-settled trust created for his own benefit, it was void under state law as to creditors and therefore not exempted from inclusion within his bankruptcy estate. *Goff* at 587, citing *In re Witlin*, 640 F.2d 661, 663 (5th Cir.1981).

3.09 It is important to note that had Dr. and Mrs. Goff not filed bankruptcy, the restriction on assignment and alienation of qualified trusts that they were arguing in bankruptcy most likely would have protected their interest in the Keough plans from being attached by their creditors. *Commercial Mortgage Insurance, Inc. v. Citizen's National Bank*, 526 F.Supp. 510 (N.D.Tex.1981).

3.10 Partially in response to the *Goff* decision, the Texas Legislature enacted an amendment to Texas Property Code, chapter 42. That statute as it existed prior to and after the amendment, T.P.C. § 42.001, provides in pertinent part that eligible personal property is "... exempt from attachment, execution, and seizure for the satisfaction of debts, except for incumberances properly fixed on the property." T.P.C. § 42.0021 was added in 1987, effective September 1, 1987. It provides:

(a) In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract, including a retirement plan for self-employed individuals, or under an individual retirement account or an individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan,

contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986. (Footnote citing 26 U.S.C.A. § 1 et seq). A person's right to the assets held in or to receive payments, whether vested or not, under a government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974. (Footnote citing 29 U.S.C.A. § 1001 et seq).

(b) Contributions to an individual retirement account that exceed the amounts deductible under the applicable provisions of the Internal Revenue Code of 1986 and any accrued earnings on such contributions are not exempt under this section unless otherwise exempt by law.

Clearly, this legislation is intended to "move" the ERISA-qualified plan, sought to be exempted by debtors such as the Volpe's, out of the "federal law" portion of Code § 522(b)(2)(A) and "convert" it to "state law". This statute is relied on by the Debtors in this case and has been challenged by NCNB as violating the preemption provisions of ERISA.

3.11 Although the primary issue is framed as whether T.P.C. § 42.0021 is preempted by ERISA, the parties arguing to this Court have virtually conceded preemption. The argument at the hearing and through post-hearing briefs has focused instead on whether ERISA, as interpreted by the recent United States Supreme Court opinion, *John N. Mackey, et al. v. Lanier Collections Agency and Service, Inc.*, — U.S. ——, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), has "overruled" *Goff* either as to the property of the estate issue (Code § 541(c)(2)), or the "exempt under other federal law" issue (Code § 522(b)(2)(A)).

3.12 The Debtors' contentions for retaining their interests in the various accounts are as follows:

a. First they argue that the IRA accounts are not covered by ERISA, citing 29 U.S.C. § 1003 and the regulations inter-

preting it at 29 C.F.R. 2510.3–3(b) (1987). Therefore, the Debtors argue that even if preemption is applicable to State law insofar as it "relates" to an employee benefit plan, IRA's are not covered by ERISA. So the preemptive provision of ERISA will not serve to preempt that portion of T.P.C. § 42.0021 which allows debtors to exempt IRA accounts.

b. Second, Debtors argue that the ADC–Plan is not property of their bankruptcy estate because (i) the plans are not self-settled and are therefore excludable under traditional estate spendthrift trust law; or (ii) the *Mackey* decision overrules the Fifth Circuit *Goff* holding that "applicable non-bankruptcy law" does not mean ERISA. The Debtors' argument concludes that the anti-alienation provisions of ERISA therefore do operate to exclude such plans from the Debtors' estate under Code § 541(c)(2).

c. Thirdly, Debtors contend that even if preemption would otherwise be applicable, 29 U.S.C. § 1144(d) and 11 U.S.C. § 522(b) "federalize" T.C.P. § 42.0021 to save it.

3.13 Although NCNB virtually assumes that ERISA preempts T.P.C. § 42.0021, their contentions for including the Debtors interest in the ADC–Plan and the IRA's in property of the estate are as follows:

a. First, citing a series of court opinions [4], they argue that T.C.P. § 42.0021 "relates" to employee benefit plans and as such is preempted by ERISA;

b. Second, they argue that 29 U.S.C. § 1144(d) does not "federalize" T.P.C. § 42.0021; and

c. Third, NCNB argues that the Debtors are only entitled to exempt a "single" account or plan and that the multiple IRA accounts plus the ADC–Plan clearly exceed the limits of T.P.C. § 42.0021.

## IV. PREEMPTION

4.01 Despite the fact that much of the argument by both sides of this issue virtu-

ally concedes preemption, I feel compelled to begin my analysis with the very question the parties assume they know the answer to. I will begin with a basic description of the mechanics of preemption analysis.

4.02 The fact that valid federal law is supreme over, and preempts, conflicting state law is a matter of Constitutional fiat. Article VI, clause 2 of the U.S. Constitution, commonly known as "the supremacy clause" states in relevant part:

"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land, any Thing in the Constitution or Laws of any State *to the Contrary* notwithstanding. (emphasis added)."

U.S. CONST., Article VI, cl. 2.

4.03 The determination of whether there is valid federal law on a subject and whether the state law under analysis conflicts is either a matter of common sense or a matter of statutory interpretation.

a. Those cases where the determination is one primarily of common sense are the cases where both Congress and a state legislature have passed statutes and the federal statute says something like "You must always do X" and the state statute says "You must never do X". Obviously, the state statute is preempted and you must always do X. This type of preemption is sometimes called "direct conflict" which is accurate as far as it goes. The inaccuracy of the label comes from the fact that other types of preemption also involve conflict, albeit sometimes less direct.

b. Where the determination cannot be made through use of one's common sense, the issue becomes a matter for statutory interpretation [5]. Since Congress can choose to preempt an entire field for regulation to itself either explicitly or implicitly, any analysis must first start with a defini-

---

4. *Mackey v. Lanier,* supra, *In re Hirsch,* 98 B.R. 1 (Bankr.D.Ariz.1988); *In re Brown, et al.,* LEXIS 1542 (Bankr.Okla.1989); *In re Komet,* 93 B.R. 498 (Bankr.W.D.Tex.1988), opinion withdrawn.

5. See e.g. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) at 1552 where Justice O'Connor states "the question whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone."

tion of how large is the field which is intended to be preempted. For example, if Congress passed a law setting out minimum safety requirements for couplers for railroad cars and a state passed a law requiring certain hand rails on railroad cars to enhance safety, common sense would not necessarily tell one whether the state law were preempted. One would have to first decide whether the field Congress meant to regulate was the broad field of "railway safety" or the narrower field of "couplers for railroad cars". If the former were the case, the state law would be preempted. If the latter were the case, it would not be. It is this stage of the analysis on which I concentrate to decide the instant case.

4.04 The method for determining how large a field Congress intended to preempt starts with deciding whether Congress preempts the field *imp*licitly or *exp*licitly.

■ b. When Congress has not explicitly preempted a field one must consider factors such as "whether (1) the area requires national uniformity, (2) there is evidence of Congressional design to preempt the field, or (3) the state statute actually and directly conflicts with the federal." *KVUE v. Austin Broadcasting Corp.*, 709 F.2d 922 (5th Cir.1983).

■ c. When Congress explicitly preempts the field, one's task then is to determine the *scope* of that preemption. 29 U.S.C. § 1144(a) is clearly an explicit preemptive effort. The "field" preempted appears to be any state laws which "relate to any employee benefit plan". In the case at hand, the task then is to determine whether T.P.C. § 42.0021 is a state law which "relates to any employee benefit plan." Although this state's statute does not expressly refer to an ERISA employee benefit plan, the statute's reference to the "applicable provisions of the Internal Revenue Code of 1986" by necessity incorporates ERISA in its substantive test for exemption qualification. See generally, 29 U.S.C. § 1002(2)(A), Treas.Reg. § 1.401–1(b)(1)(i) and 26 U.S.C. § 401. Plainly stated, the connection between T.P.C. § 42.0021 and ERISA is apparent.

To qualify for the exemption a plan must generally qualify under ERISA.

4.05 The Supreme Court has described the three types of preemption as follows:

Federal law may preempt state law in any of three ways. First, in enacting the federal law, Congress may explicitly define the extent to which it intends to preempt state law. E.G., *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 95–96, 103 S.Ct. 2890, 2898–2899, 77 L.Ed.2d 490 (1983). Second, even in the absence of express preemptive language, Congress may indicate an intent to occupy an entire field of regulations, in which case the States must leave all regulatory activity in that area to the Federal Government. E.G., *Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 901 [91] L.Ed. 1447 (1947). Finally, if Congress has not displaced state regulation entirely, it may nonetheless preempt state law to the extent that the state law actually conflicts with federal law. Such a conflict arises when compliance with both state and federal law is impossible. *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–1433, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404 [85 L.Ed. 581] (1941).

■ 4.06 Another point to be made about preemption analysis is that, just as the phrase "direct conflict" is somewhat misleading, the cases which make statements such as "The preemption provision [of § 514(a)] ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirements," *see Mackey* 108 S.Ct. at 2185 citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728, are also misleading. No state law is preempted unless it conflicts with

valid federal law. See the underlined language in the quote from the supremacy clause above. What these cases seem to mean is that state law which does not conflict with a positive Congressional enactment in the common-sense sense described in section 4.03(a) above may nevertheless conflict with Congressional silence on a subject which is within a field as to which Congress has reserved to itself the sole right to regulate; while these preempted state laws may seem to further the purposes of the federal scheme in question, they conflict with Congress' implicit or explicit declaration that any regulation within a certain field is to be done by Congress itself.

## V. THE SUPREME COURT DECISION IN MACKEY

■ 5.01 After the Texas Legislature's response to *Goff* in T.P.C. § 42.0021 had apparently put an end to creditor's attempts to reach the pension benefits of debtors in bankruptcy, the *Mackey* opinion revived the creditors' hopes with its broad statement that "state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)" *Mackey v. Lanier Collections Agency*, supra, footnote 3. 108 S.Ct. at 2185. As I will demonstrate through the analysis which follows, I do not believe that this broad statement is the holding of *Mackey*. First, it appears that the Supreme Court fell victim to the allure of a well-turned phrase. The state law under analysis in *Mackey* did make reference to and indeed, solely applied to, ERISA benefit plans. The true grounds on which the *Mackey* court affirmed the Georgia Supreme Court was that "... Ga.Code Ann. § 18-4-22.1 ("G.C.A. 18-4-22.1"), which singles out ERISA employee welfare benefit plans for different treatment under state garnishment procedures", was *in conflict with* Congressional silence as to the garnishability of ERISA *welfare* benefit plans. In the portion of the *Mackey* opinion which upheld the general Georgia garnishment laws, the Supreme Court discerned from an analysis of the structure of ERISA, specifically 29 U.S.C. 1056(d), that Congress had reserved to itself the right to say whether pension plans or welfare plans could be garnished. Since G.C.A. 18-4-22.1 came within this forbidden field *and* was in conflict with Congressional silence on the subject of garnishment of ERISA welfare benefit plans, it was preempted. The Supreme Court was right to tie the preemption analysis into ERISA's express preemption clause. Where I believe the Court ruled more broadly than necessary was in stating that "state laws which make 'reference to' ERISA plans are laws that 'relate to' those plans within the meaning of § 514(a)." *Mackey v. Lanier Collections Agency*, 108 S.Ct. at 2185.

5.02 As authority for the statement quoted above, the Supreme Court cited *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985) and *Shaw v. Delta Air Lines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Reference to each of the cited opinions shows that the actual quote in *Shaw*, *Metropolitan Life Ins. Co.*, and *Pilot Life* is:

> "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it *has* a connection with or reference to such a plan." (emphasis added). *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 at 96–97, 103 S.Ct. 2890 at 2900, 77 L.Ed.2d 490 at 500, (1983). (emphasis added).

I submit that there is a difference, if not a vast difference, between "makes reference to" and "has reference to". The Supreme Court's change of focus from "has reference to" to "makes reference to" is what raised creditors' hopes when they looked at the language of T.P.C. § 42.0021. T.P.C. § 42.0021 clearly "makes reference to" ERISA plans. It will be this Court's holding that it does not "have reference to" ERISA plans within the intent of the Congress which drafted 29 U.S.C. § 1144(a). The Supreme Court's emphasis on "makes reference to" was unfortunate and not necessary to its true holding in *Mackey*.

5.03 After dealing with the "easy question" (the opinion on this point is 9–0) of

whether G.C.A. 18–4–22.1 was preempted, the Supreme Court in *Mackey* turned its attention to "the more complex question" of whether all Georgia garnishment laws were preempted. The Court's analysis could have focused, but did not, on whether the general Georgia garnishment laws affected employee benefit plans in too tenuous, remote and peripheral a manner to be said to "relate to" employee benefit plans within the meaning of 29 U.S.C. § 1144(a). Perhaps because the Court had adopted *Shaw*'s common-sense, dictionary meaning of the term "relate to", the Court was not much interested in refining the definition of "relate to" by reference to Congressional intent. Yet Justice O'Connor had stated for a unanimous court in *Pilot Life* that "[T]he question whether a certain state action is preempted by federal law is one of congressional intent. The purpose of Congress is the ultimate touchstone." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985), quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189, 55 L.Ed.2d 443 (1978), quoting *Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 222, 11 L.Ed.2d 179 (1963).

In upholding Georgia's general garnishment laws, the Supreme Court focused less on the size of the field Congress intended to preempt by the "relate to" language of 29 U.S.C. § 1144(a) and more on the fact that there was no conflict between ERISA and these laws because ERISA makes no provision for enforcement of judgments against plans though it does prescribe a method for the creation of such judgments.

Although the Supreme Court does not focus its analysis in the *Mackey* case on the borders of the "relate to" language, I find it significant that the Court cites with apparent approval in footnote 6, a series of cases which do attempt to draw the line between those state laws that "relate to" ERISA and those that fall in the "narrow category of laws which affect employee benefit plans but which do not relate to them within the meaning of § 514(a)." *Franchise Tax Board of California v.* *Construction Laborers Vacation Trust for Southern California*, 679 F.2d 1307 (9th Cir.1982).

## VI. OTHER CASE LAW ON THE SCOPE OF THE ERISA PREEMPTION CLAUSE

6.01 Because the emphasis in *Mackey* was not on the meaning of "relate to" as illuminated by Congressional intent, I examine several other Supreme Court and Circuit opinions which do grapple with this issue.

a. The series of Supreme Court opinions dealing with ERISA preemption which preceded *Mackey* includes: *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) and *Fort Halifax Packing Co. Inc. v. Coyne*, 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

b. Circuit opinions which attempt to draw the line between "relate to" and "tenuous remote and peripheral" include *Franchise Tax Board of California v. Construction Laborers Vacation Trust for Southern California*, 679 F.2d 1307 (9th Cir.1982); *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir.1986) and *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142 (2d Cir.1989).

## VI. A. SUPREME COURT PRECEDENT

6.02 The state law under consideration in *Alessi v. Raybestos* was a New Jersey law which provided that workers compensation benefits received during a career could not be offset against a retirees pension benefits. After determining that no provision of ERISA prohibited such offset, or "integration", the Supreme Court determined that the New Jersey law was nevertheless preempted because it foreclosed one method of calculating benefits which

ERISA permitted—a direct conflict. The Court stated "[w]e need not determine the outer bounds of ERISA's preemptive language to find this New Jersey provision as impermissible intrusion on the federal regulatory scheme." *Alessi, supra.* Although New Jersey's attempt to regulate the terms or conditions of a plan was indirect, the Supreme Court found *any* attempt to regulate terms or conditions to be objectionable under 29 U.S.C. § 1144(a). *Alessi,* supra.

6.03 The state law under consideration in *Shaw v. Delta Air Lines* was a New York law which would have prohibited employers from paying lesser benefits to workers who were pregnant than to workers who had other disabilities. The Supreme Court first reiterates "In deciding whether a federal law preempts a state law, our task is to ascertain Congress' intent in enacting the federal statute at issue." *Shaw, supra* 103 S.Ct. at 2899. The Court then adopts the dictionary meaning of "relate to", stating:

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has connection with or reference to such a plan." [6]

Up to this point there had apparently been some contention that "relate to" only meant those state laws which deal with the subject matters covered by ERISA—reporting, disclosure, fiduciary duty and the like. The Court refutes this contention by reference to legislative history; Congress had considered an earlier version of ERISA's preemption provision which was more narrowly drawn but in the final version adopted the broad "relate to" language. Portions of the quoted legislative history which will be important for our later analysis include the following:

"Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power *to regulate* the field of employee benefit plans." (emphasis added)

Statement by Representative Dent, one of the bill's [ERISA'S] sponsors.

"It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for *Federal regulations* thus eliminating the threat of *conflicting or inconsistent State and local regulation of employee benefit plans.* (emphasis added)

Statement by Senator Williams, one of the bill's sponsors.

The Court goes on to conclude "[g]iven the plain language of § 514(a), the structure of the Act, and its legislative history, we hold the Human Rights Law and the Disability Benefits Law 'relate to any employee benefit plan' within the meaning of ERISA's § 514(a)." *Shaw, supra* 103 S.Ct. at 2901. The footnote to this conclusion is influential on our conclusion of whether § 42.0021 is preempted and is as follows:

"*Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan.*" Cf. *American Telephone and Telegraph Co. v. Merry,* 592 F.2d 118, 121 (CA2 1979) (state garnishment of a spouse's pension income to enforce alimony and support orders is not preempted). The present litigation plainly does not present a borderline question, and we express no views about where it would be appropriate to draw the line. (emphasis added). *Shaw,* fn. 21, 103 S.Ct. at 2901.

A final guidance to be drawn from *Shaw* comes from the Court's analysis of ERISA's savings clause, 29 U.S.C. § 1144(d). The Court finds that the enforcement mechanism of the Human Rights Law may stand because to preempt it would impair other federal law—i.e., Title VII which depended in part on state enforcement mechanisms—which is prohibited by 29 U.S.C. § 1144(d).

---

**6.** "See Black's Law Dictionary 1158 (5th ed. 1979) (Relate. To stand in some relation; to have bearing or concern; to pertain; to refer; to bring into association with or connection with").

6.04 The state law under consideration in *Metropolitan Life* is a Massachusetts state law which set minimum health benefit standards (mental health benefits must be included) for insurance policies, some of which were purchased by ERISA welfare benefit plan managers. This case is not decided by an analysis of whether the state law relates to employee benefits clause because (1) 29 U.S.C. § 1144(b), the so-called "insurance savings clause", states that the broad preemption of 29 U.S.C. § 1144(a) is not meant to preempt laws that regulate insurance and (2) the Court determined that as applied, the state law in question is a law that regulates insurance. *Metropolitan Life, supra.* .

6.05 The state law under consideration in *Pilot Life* was the Mississippi common law of bad faith breach of contract. An employee who felt that his welfare benefit claim had been improperly processed asserted a state law cause of action for bad faith rather than an ERISA based cause of action for improper processing. Because the suit dealt with whether an employee had received proper benefits from his employer sponsored plan, it obviously related to an employee benefit plan within the meaning of 29 U.S.C. § 1144(a). The only question was whether the Mississippi law was also law "that regulates insurance." The Court determines that it is not, and it was therefore determined to be preempted. *Pilot Life, supra.*

6.06 The state law under consideration in *Fort Halifax* was a Maine law which required employers (of more than 100 employees) who ceased operations to pay a one-time, lump sum termination benefit to employees who were laid off. While under the broad meaning of "relate to" used to this point in Supreme Court analysis of 29 U.S.C. § 1144, the payment would obviously relate to employee benefits, the Court determines that the law is not preempted because, being a single payment requirement, it does not relate to an employee benefit *plan*. Justice White wrote a dissent in which he criticizes the majority's creation of a "loophole in ERISA's preemption statute" by making preemption turn on the extent to which the state law requires the creation of an administrative scheme to be managed by employers (possibly large multi-state employers). While Justice White may be correct in his criticism, the majority opinion is instructive for our purposes in the analytical framework it uses to reach its conclusion. The majority examines (1) the plain language of ERISA's preemption provision, (2) the underlying purpose of that provision and (3) the overall objectives of ERISA itself. In *Fort Halifax*, the court narrows the broad construction of the "relates to" language discussed in *Shaw* and which was broadly applied in *Mackey*. The Court's analysis distinguishes state laws which affect plans and their administration from state laws that relate to benefits. The court states:

"We have held that the word 'relate to' should be construed expansively: '[a] law relates to an employee benefit plan in the normal sense of the phrase, if it has a connection with or reference to such plan.'" *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Nothing in our case law, however, supports appellant's position that the word 'plan' should in effect be read out of the statute. Indeed, *Shaw* itself speaks of a state law's connection with or reference to a *plan*. Ibid. The words 'benefit' and 'plan' are used separately throughout ERISA, and nowhere in the statute are they treated as the equivalent of one another. Given the basic difference between a 'benefit' and a 'plan', Congress' choice of language is significant in its preemption of only the latter....

The purposes of ERISA's preemption provision make clear that the Maine statute in no way raises the types of concerns that prompted pre-emption. Congress intended preemption to afford employers the advantages of a uniform set of administrative procedures governed by a single set of regulations. This concern arises, however, with respect to benefits whose provision by nature requires an ongoing administrative program to meet the employer's obligation. It is for this reason that Congress preempted

state laws relating to *plans*, rather simply to *benefits*. Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." (emphasis added).

Further, the court in *Halifax* promulgated guidelines for lower courts to follow in conducting ERISA preemption analysis:

"ERISA preemption analysis 'must be guided by respect for the separate spheres of governmental authority preserved in our federalist system.'" *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S., at 522, 101 S.Ct. at 1905. The argument that ERISA preempts state laws relating to certain employee benefits, rather than to employee benefit *plans* is refuted by the express language of the statute, the purposes of the preemption provision, and the regulatory focus of ERISA as a whole. If a State creates no prospect of conflict with the federal statute, there is no warrant for disabling it from attempting to address uniquely local social and economic problems. Since the Maine severance pay statute raises no danger of such conflict, we hold that the statute is not preempted by ERISA. *Fort Halifax* 107 S.Ct. at 2221.

6.07 The next opportunity the Supreme Court had to address the subject of ERISA preemption was *Mackey*. It is interesting that here Justice White writes the majority opinion without even a cite to the last Supreme Court decision on the subject and in a way that returns focus to the language of 29 U.S.C. § 1144(a) and away from Congressional intent.

*Mackey* represents the first time the Court deals with a state law which is arguably anywhere near the borderline between "relate to" and "tenuous, remote and peripheral." The previous major controversy regarding ERISA preemption of state law had dealt with whether pension plans *could*

be garnished for the purpose of support of the family of the covered employee, usually in the context of divorce. This controversy presented a clash between the area of domestic relations, traditionally governed by state law, and the field of employee benefits, now governed by federal law. Lower courts were split on the issue.[7] As discussed in *Mackey*, the matter was resolved by 1984 Congressional amendments to ERISA (without being directly addressed by the Supreme Court, though the reference in *Shaw* to *AT & T v. Merry* did add momentum to the apparent trend toward allowance of garnishment of pension plans through what came to be known as "qualified domestic relations orders".) What was not resolved was whether (i) Congress agreed with the courts which had held that state law which allowed garnishment of pension plans for domestic relations purposes were not preempted by ERISA because the 1974 Congress had never meant to regulate that large a field, or (ii) this Congress realized that the courts which held those garnishment laws preempted were right but this Congress was trimming back the field to be regulated by Congress in deference to the separate spheres of governmental authority preserved in a federalist system. *Mackey* does not resolve this issue but states that both explanations of the intent of the 1984 amendments are plausible.

6.09 The issue of the interrelationship of state garnishment laws and ERISA will only come up in *welfare* benefit plan cases because ERISA preemption of state garnishment laws in the context of *pension* plans is in that easy category of preemption where application of common sense reveals a fatal conflict. Federal law which states "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. § 1056(d)(1), will obviously supersede a

---

**7.** *AT & T v. Merry,* 592 F.2d 118 (2nd Cir.1979) (state domestic relations orders of garnishment against pension plans *are* enforceable and state laws authorizing such garnishments are not preempted by ERISA); *Stone v. Stone,* 632 F.2d 740 (9th Cir.1980) (same); *Ogle v. Heim,* 69 Cal.2d. 7, 69 Cal.Rptr. 579, 442 P.2d 659 (1968) appeal dism'd 393 U.S. 265, 89 S.Ct. 477, 21 L.Ed.2d 426 (1967) (There is no implied exception to 29 U.S.C. § 1056(d) which would allow enforcement of state domestic relations garnishment orders).

state law which allows a claim against such benefits.

## VI.  B.  CIRCUIT COURT PRECEDENT

6.10  Now, therefore, I examine one circuit decision which deals with the question of whether garnishment laws [and conversely, exemption laws] are the sort which relate to ERISA plans within the meaning of 29 U.S.C. § 1144(a) and two circuit opinions which uphold state laws as affecting employee benefit plans in "too tenuous, remote and peripheral" a manner to be preempted by ERISA.

Judge Tang's dissent in *Franchise Tax Board of California* cited with approval by the Supreme Court in *Mackey* at footnote 6, 108 S.Ct. on page 2186 and later followed in the Ninth Circuit explains well why garnishment laws are not the sort Congressmen had in mind when drafting 29 U.S.C. § 1144(a).  In his analysis of the scope of 29 U.S.C. § 1144(a) Judge Tang begins with the definition of "State" in § 1144(c)(2) which is "includes a State, any political subdivision thereof, or any agency or instrumentality of either, which *purports to regulate, directly or indirectly,* the terms and conditions of employee benefit plans covered by this subchapter." *Franchise Tax Board* at 1312, quoting 29 U.S.C. § 1144(c)(2) (emphasis in *Franchise Tax Board*).  Acknowledging the broad scope of § 1144(a) and the fact that even an indirect regulatory effect will contravene § 1144(a), Judge Tang states:

"Section 1144(a)'s scope, however, is not unlimited.  The legislative choice of the word 'regulate' in section [1144's] definitions suggests that the section was not designed to preempt state laws having only a *tangential, non regulatory effect* on benefit plans.  Had that been the design, less restrictive words such as 'affect', 'influence', or 'connected with' would have been employed, or benefit plan administrators would have been given blanket immunity from the application of state law.  Thus, there exists a 'narrow category of laws which affect employee benefit plans but which do not relate to them within the meaning of § 514(a).' "  In my opinion, the California levying statute falls within this narrow category of state laws.  The state statute seeks only to secure payment of delinquent taxes and treats trust funds as merely another taxpayer asset the state may tap to achieve this aim.  The statute does not regulate directly or indirectly, plan reporting, disclosure, participation, funding, vesting, benefit calculation or the Trustee's fiduciary responsibilities.

The only 'regulatory' effect the Trustees have identified is the administrative burden associated with processing levy notices.  Similarly, the Department of Labor argues that tax levy statutes are preempted because of the administrative burden entailed in litigating a levy's validity.  *See* ERISA Opinion Letter 79–90A, [1979–1981 Transfer Binder] Pens. Plan Guide (CCH) ¶ 25,331.  This effect is simply too minor to be considered 'regulatory.' "

Judge Tang's finding of insufficient regulatory effect to justify preemption is bolstered by the Supreme Court's refusal to preempt the Georgia general garnishment laws in *Mackey*.  It would appear that T.P.C. § 42.0021 has even less of a regulatory effect than did the California levying statute or the Georgia general garnishment laws.

6.11  In *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, the Fifth Circuit dealt with a case in which beneficiaries of a former stockholder (an employee benefit plan) which had sold its stock at what the beneficiaries determined, in light of subsequent revelations, to have been an inadequate price, sued a director of the company and the trustees of the plan under ERISA and under common law breach of fiduciary duty theories.  The District court had held the state common law causes of action preempted by ERISA and the case was tried to a jury solely on ERISA causes of action.  After discussing most existing circuit opinions which dealt with ERISA preemption, the Fifth Circuit concludes that the two common threads in the decisions are that (1) when a state law involves the exercise of traditional state authority, courts are less likely to find preemption

and (2) when the state law in question does not deal with relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries and the beneficiaries— but rather with a relation between one of these entities and a third party, the Courts are less likely to find preemption. The Fifth Circuit bases its conclusion in *Sommers* solely on the "relate to" language of 29 U.S.C. § 1144(a) and not also on the definition of "State" in 29 U.S.C. § 1144(c)(2) which is suggested as a ground of decision by some other decisions such as the Tang dissent above. The Fifth Circuit focuses its attention on the degree to which the state law in question affects the relationship between the principal ERISA entities. It concedes that if 29 U.S.C. § 1144(c)(2) is relevant, the question of the extent to which a questioned state law "purports to regulate" ERISA terms would be relevant. Focusing then on whether the state common law of fiduciary duty of a director to a shareholder (which happens to be an employee benefit plan) affected the relationship among the "principal ERISA entities" the Court finds that it does not and is therefore not preempted by ERISA since it relates to the ERISA plan in "too tenuous, remote and peripheral a manner". See generally *Sommers Drug Stores, supra.*

6.12 Finally, I examine a very recent Second Circuit case involving the question of whether a Connecticut law (which provides that reserves set aside to cover uncashed checks escheat to the state (as abandoned property) after three years) conflicts with ERISA. *Aetna Life Ins. Co. v. Borges,* 869 F.2d 142 (2nd Cir.1989). This law was challenged by Aetna, a company which provides employers with group health and accident coverage pursuant to ERISA-covered welfare benefit plans. The magistrate held that the Connecticut law was preempted on the ground that the escheat law's effect on employee benefit plans was too great. The district court adopted this opinion. The Second Circuit reversed on the ground that the state law under consideration affected employee benefit plans only in a remote and tangential manner and therefore did not "relate to" plans within

the meaning of 29 U.S.C. § 1144(a). Focusing on the Congressional purpose for preemption and citing *Fort Halifax,* the Second Circuit notes that "ERISA's preemption provision was prompted by a recognition that employers establishing and maintaining employee benefit plans are faced with the task of coordinating complex administrative activities." *Aetna, supra* at page 145. The Second Circuit goes on to state:

"The [Supreme] Court has recognized, however, that Congress, in seeking to preempt all state laws that 'relate to' employee benefit plans could not possibly have meant to preempt all laws having an impact on such plans, no matter how small or how tangential.... A preemption provision designed to prevent state control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction." Id. at page 145.

After analyzing other decisions on the subject of ERISA preemption, the Court concludes:

"Laws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them, or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application—often traditional exercises of state power or regulatory authority whose effect on ERISA plans is incidental."

6.13 There are no clear preemption "formulas," and it is difficult even to distill meaningful "principles" from the mass of preemption cases. Applying the lessons of all cases cited in this section to the current preemption question however, I believe that T.P.C. § 42.0021 does not purport to regulate the terms and conditions of an employee benefit plan; it does not affect the relationship between the principal ERISA entities. Any relationship to ERISA is simply too tenuous, remote or peripheral to "relate" within the intend-

ment of 29 U.S.C. § 1144(a). I conclude that the Texas statute is not preempted and the objection of NCNB on preemption grounds should be denied.

## VII.  ONE PLAN ISSUE

■ 7.01  Having jumped into the briar patch of narrowly construing the broad language of the Supreme Court and disagreeing with almost every published opinion on this subject to date,[8] I will now delve into the issue of "how many" retirement plan accounts a debtor may exempt under T.P.C. §§ 42.0021.

7.02  In *Butner v. United States*, 440 U.S. 48, 50, 99 S.Ct. 914, 915, 59 L.Ed.2d 136 (1979), the Supreme Court recognized that property rights are created by state law and that, unless federal law requires a different result (which it does not here), state law should govern property law issues in federal court. Thus, we look to Texas law to determine the interpretation of what a debtor may exempt under T.P.C. § 42.0021.

7.03  Texas courts have long held that liberal views prevail with regard to Texas exemptions claims. See generally *Cobbs v. Coleman*, 14 Tex. 594 (1855); *Rodgers v. Ferguson*, 32 Tex. 523 (1870); *Patterson v. English*, 142 S.W. 18 (Tex.Civ.App.—Amarillo, 1911, no writ history); *Malone v. Kennedy*, 272 S.W. 509 (Tex.Civ.App.—Beaumont, 1925, no writ history); *Cities Service Co. v. North River Insurance Co.*, 130 Tex. 186, 107 S.W.2d 994 (Tex.Comm'n. App.1937); *Moore v. Neyland*, 180 S.W.2d 658 (Tex.Civ.App.—Texarkana, 1944, no writ history).

7.04  For example, in *Cobbs v. Coleman, supra,* an exemption for a "horse" is held to extend to things that would make its use beneficial such as saddle, bridle, etc. The language of T.P.C. § 42.0021 is susceptible to the interpretation that only one plan or account is exempt ("*a* stock bonus, ... or other similar plan or account ... or *an*

individual retirement annuity") but it is also susceptible to the interpretation that several accounts or employee benefit plans are exempt as long as they are part of one individual's overall *plan* for retirement, which plan could be expressed through several types of "plans" and "accounts". This Court believes that the state law which would exempt a mule as a horse,[9] a bridle and saddle as a horse [10] and jewelry as clothing [11] would exempt all of the debtor's overall retirement plan even if this plan were expressed through the establishment of several "accounts". Clearly, the Debtors could have consolidated their various IRA qualified accounts into one and have kept exactly the same amount of benefits. If the Debtors had quit their job, received the proceeds of their ADC–Plan and "rolled" it over into an IRA, consolidating the other IRA accounts into one, and accomplished this pre-petition, the same result would apply. Therefore, I hold that all of the Volpe's retirement plan, as expressed through their various IRA accounts and the ADC–Plan, is exempt pursuant to T.P.C. § 42.0021.

## VIII.  OVERRULING GOFF

8.01  The thrust of one of the Debtors' arguments has revolved around the presumption that T.P.C. § 42.0021 would be preempted and the bulk of the argument has focused on the "need" to reanalyze the *Goff* decision. In essence, the Debtor urges this Court to find that *Mackey* impliedly overrules *Goff.*

8.02  On one hand, the Debtor argues that *Mackey* would support a conclusion that ERISA preempts the Texas spendthrift trust statute. Since 29 U.S.C. § 1056(d), the anti-alienation provision for employee pension benefit plans protects even self-settled trusts, the Debtors conclude that the state spendthrift trust law relied upon by *Goff* must be preempted. If

---

8.  See e.g., *In re Hirsch*, 98 B.R. 1 (Bankr.D.Ariz. 1988); *In re Brown*, 95 B.R. 216 (Bankr.N.D. Okla.1989); *In re Komet*, (Bankr.W.D.Tex.1988 —withdrawn); *In re Dyke*, 99 B.R. 343, (1989).

9.  *Allison v. Brookshire*, 38 Tex. 200 (1873).

10.  *Cobbs v. Coleman*, 14 Tex. 596 (1855).

11.  *Matter of Fernandez*, 855 F.2d 218 (5th Cir. 1988).

preempted, Debtors claim that the ERISA restrictions on transfer would then remain effective as "applicable non-bankruptcy law" under Code § 541(c)(2).

8.03 This position is not supported by the law. *Goff* used title 11 of the United States Code (bankruptcy law) to come to its conclusion that the anti-alienation provisions of ERISA were not referred to in Code § 541(c)(2). *Goff* at 587. The Debtor's logic is also faulty. Even if the "applicable non-bankruptcy law" of Code § 541(c)(2), which incorporates state spendthrift trust law, suddenly found itself with a preempted state spendthrift trust statute, it would not follow that ERISA would suddenly be elevated to fill the void. ERISA would still would not be what Congress was referring to when it used the "applicable non-bankruptcy law" language of that particular Code provision.

8.04 The other argument advanced by Debtors is that *Mackey* must cause this Court to reconsider the Fifth Circuit analysis of ERISA as a "federal exemption". The Fifth Circuit concluded that ERISA was not a "federal exemption" as contemplated by Code § 522(b)(2)(A). The Fifth Circuit was not alone in its conclusion. See e.g., *In re Daniel,* 771 F.2d 1352, 1361 (9th Cir.1985); *In re Lichstral,* 750 F.2d 1488, 1491 (11th Cir.1985); *In re Graham,* 726 F.2d 1268, 1274 (8th Cir.1984). I find insufficient support for the Debtors position on this issue and reject it.

### CONCLUSION

Based on all of the analysis above, I hold that 29 U.S.C. § 1144(a) does not preempt § 42.0021 of the Texas Property Code. I further find that the Debtor is entitled to a "plan" for retirement purposes and that such a "plan" may encompass more than one account. Although it was stated to this Court at the time of trial that NCNB would show that the accounts were not being used for retirement purposes, no evidence was presented on that issue. Further, in light of this Court's determination that preemption does not apply, it need not specifically rule on Debtors arguments under Code § 541(c)(2). However, the Court

has already determined that those arguments would be meritless. An Order consistent with these findings will be entered of even date herewith.

### ORDER OVERRULING OBJECTION TO DEBTORS' EXEMPTION OF QUALIFIED EMPLOYEE PROFIT SHARING PLAN AND INDIVIDUAL RETIREMENT ACCOUNTS

Based upon the reasons set forth in my Memorandum Opinion of April 28, 1989;

IT IS ORDERED that the Objection of NCNB–Texas National Bank to the Debtor's claimed exemptions for their profit sharing account and individual retirement accounts is overruled.